**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THURMAN MEARIN, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 06-4859 |
| | : | |
| v. | : | |
| | : | |
| CAPTAIN THOMAS DOHMAN, et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

Jones, J.                                                           September 29, 2009

Before the Court is Defendants Thomas Dohman and Mary Canino's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. No. 33) and Plaintiff's Response in Opposition thereto (Doc. No. 41).  For the reasons that follow, the Motion to Dismiss will be granted in part and denied in part.

**I.      Procedural History**

On October 30, 2006, Plaintiff Thurman Mearin filed a *pro se* Complaint against three prison officials at S.C.I. Graterford: Thomas Dohman, Captain of Security; an Unknown Lieutenant; and Mary Canino, Hearing Examiner.  Thereafter, Plaintiff filed two amended complaints.  Currently before the Court is Plaintiff's Second Amended Complaint, filed on June 18, 2008.  On July 9, 2008, Defendants Dohman and Canino ("the Moving Defendants") filed the instant Motion to Dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted.  On August 11, 2008, Plaintiff filed a motion to strike the two

exhibits that were attached to the Moving Defendants' Motion to Dismiss.[1]  On August 22, 2008, the Moving Defendants filed a Response in Opposition to the Motion to Strike.  On September 3, 2008, Plaintiff filed a Response in Opposition to the Motion to Dismiss and a Reply in support of his Motion to Strike.  On October 2, 2008, the Honorable Mary McLaughlin denied as moot Plaintiff's Motion to Strike and stated that the Court would decide whether to consider the exhibits when it ruled on the Motion to Dismiss.  This matter was reassigned to my docket on November 13, 2008.

On May 7, 2009, the Court granted Plaintiff leave to file a Third Amended Complaint on or before June 8, 2009, and notified Plaintiff that his failure to file a timely Third Amended Complaint would be deemed as Plaintiff's intent to stand on the Second Amended Complaint. Plaintiff did not amend.

## II.    Factual Allegations

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging a number of constitutional violations.  The Court recites the facts in the light most favorable to Plaintiff.

At the time of the events giving rise to this case, Plaintiff was an inmate at S.C.I. Graterford.  On November 29, 2004, Plaintiff was called to the prison security office and told by Dohman, Graterford's security captain, that a book had been delivered to the prison, addressed to Plaintiff, and that the book contained 12 bags of heroin.  (2d Am. Compl. 5.)  Plaintiff did not admit to knowledge of the heroin, and he was sent to "the hole," the prison's restrictive housing

---

[1] Defendants' Exhibit No. 1 is Confiscated Items Receipt No. A559902, dated November 2, 2004.  Defendants' Exhibit No. 2 is a Disciplinary Hearing Report, signed by defendant Canino, regarding a December 2, 2004, hearing.  Defendants' Exhibit No. 3 is Program Review Committee Decision on Plaintiff's Misconduct Appeal, dated December 16, 2004.

unit ("RHU").  (2d Am. Compl. 5, 7.)[2]  Later that day, he was given a Misconduct Report dated

November 29, 2004, and a confiscated item receipt dated November 2, 2004.  (2d Am. Compl. 5;

2d Am. Compl., Exs. A3-A4, Misconduct Report No. 424223, Nov. 29, 2004 ("Misconduct

Report"); Defs.' Mot. to Dismiss, Ex. 1, Confiscated Items Receipt No. A559902, Nov. 2, 2004

("Confiscated Items Receipt").)  The Misconduct Report charged Plaintiff with (1) possession or

use of a dangerous or controlled substance; (2) a criminal violation of the Pennsylvania Crimes

Code – namely, criminal conspiracy; (3) possession of contraband; and (4) lying to an employee.

No drug evidence existed and no package containing heroin was sent to him at the prison.

(2d Am. Compl. 10.)  The entire incident regarding the heroin was fabricated, and the charges on

the Misconduct Report are false and were deliberately falsified by certain defendants.  (2d Am.

Compl. 10.)  Dohman had ordered the Unknown Lieutenant to cite Plaintiff via the fabricated

Misconduct Report in retaliation for Plaintiff's exercise of his right to silence and refusal to

cooperate about the illegal activity in the prison.  (2d Am. Compl. 6, 7.)

The prison held a disciplinary hearing regarding the charges in the misconduct report.[3]

Canino, the hearing examiner, found Plaintiff guilty and sentenced him to 270 days in solitary

confinement.  (2d Am. Compl. 8.)  No physical evidence was produced at Plaintiff's prison

disciplinary hearing about the alleged incident, no drug evidence was turned over to the police,

and no criminal charges were filed against Plaintiff following the alleged incident.  (2d Am.

---

[2] Plaintiff alleges that, when questioned by Captain Dohman, he denied knowledge of the heroin.  (2d Am. Compl. 5.)  Plaintiff also alleges that he exercised his "right of silence" when questioned about the heroin.  (2d Am. Compl. 7.)

[3] Plaintiff alleges that the charges upon which a hearing was held did not match the charges in the written misconduct report.  (2d Am. Compl. 6.)

Compl. 8, 10.)  Canino relied upon the fabricated Misconduct Report to sanction Plaintiff

without any supporting physical evidence.  (2d Am. Compl. 7.)  Canino also saw that the charges

at the disciplinary hearing did not match those written on the Misconduct Report.  (2d Am.

Compl. 6.)

Plaintiff actually served 302 days in solitary confinement.  (2d Am. Compl. 8, 10.)

During that time, he was deprived of vocational, academic, and rehabilitation programs; he had

no access to religious services or prison employment; he was deprived of visits and library

privileges; he had restricted access to the law library; he was subject to visual body cavity

searches each time he exited or entered his cell; he was permitted three showers a week; he had

to endure 24 hours of light in his cell; he received cold food; his personal and legal mail was

censored; and he was unable to satisfy his prescriptive program plan.  (2d Am. Compl. 8-9.)  This

discipline increased Plaintiff's security classification level, which led prison officials to transfer

him to a distant supermax prison, S.C.I. Greene.  (2d Am. Compl. 9.)

## III.   Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

and citation omitted).  After the Supreme Court's decision in Bell Atl. Corp. v. Twombly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009) (citing

Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556).  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  In Ashcroft v. Iqbal, the Supreme Court clarified that this standard applies to all civil cases.  Iqbal, 129 S.Ct. at 1949.

Pro se pleadings are to be construed liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  When examining a pro se complaint, a court must apply the applicable law, regardless of whether the pro se litigant has mentioned it by name.  Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted).

## IV.   Discussion

The Court reads Plaintiff's Second Amended Complaint liberally and observes that Plaintiff appears to allege three main constitutional violations.  First, he claims that prison officials unlawfully retaliated against him for exercising his First and Fifth Amendment rights by denying participation in, or refusing to answer questions about, an attempt to smuggle drugs into the prison.  He claims that Defendants' retaliatory acts were fabricating a misconduct charge against him, placing him into the RHU and depriving him of various privileges, and transferring him to S.C.I. Green.  (2d Am. Compl. 8-9.)  Second, Plaintiff claims that Defendants deprived him of substantive and procedural due process by failing to adduce sufficient evidence to support their fabricated charge and Plaintiff's placement into the RHU.  Third, he claims that Defendants violated his Eighth Amendment guarantee against cruel and unusual punishment by placing him into solitary confinement for 302 days without sufficient evidence of misconduct.

A. **The Court Will Not Consider the Confiscated Item Receipt or the Disciplinary Hearing Report, which the Moving Defendants Attached to their Motion to Dismiss**

"It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits attached thereto, and matters of public record." Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 (3d Cir. 1999) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). "Public records," for the purposes of a motion to dismiss, include criminal case dispositions, including convictions or mistrials, letter decisions of government agencies, published reports of administrative bodies, and judicial proceedings. Pension Benefit Guar. Corp. , 998 F.2d at 1197; Southern Cross Overseas Agencies, Inc. v. Wah Kwong, 181 F.3d 410, 426 (3d Cir. 1999). A court may also take judicial notice of a judicial opinion as a public record, but it may do so only to establish the existence of the opinion; if a court considers a judicial opinion to find facts, that factfinding converts the motion to dismiss into a motion for summary judgment. Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004) (quoting Wah Kwong, 181 F.3d at 427 n.7).

The Third Circuit has determined that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." Pension Benefit Guar. Corp. v. White Consol. Inds., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (internal citations omitted). See also Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as

such, they may be considered by the court." (quoting 62 Fed. Proc., L.Ed. § 62:508)); id. (holding

that the court may consider documents "whose contents are alleged in the complaint and whose

authenticity no party questions").  It is proper for a court to consider such documents if they are

"integral to or explicitly relied upon in the complaint." Lum, 361 F.3d at 222 n.3 (quoting In re

Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  "[C]onsidering such a

document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on

notice that the document will be considered."  Lum, 361 F.3d at 222.

    In this case, Plaintiff moved to strike two of the exhibits that were attached to the Moving

Defendants' Motion to Dismiss:  Exhibit No. 1 – Confiscated Items Receipt No. A559902, dated

November 2, 2004 ("Confiscated Items Receipt"), and Exhibit No. 2 – a Disciplinary Hearing

Report, signed by Canino, regarding a December 2, 2004, hearing ("Disciplinary Hearing

Report").[4]  Plaintiff disputes the authenticity of the Confiscated Items Receipt, which he also

argues is illegible.  (Pl.'s Mot. to Strike ¶¶ 2, 4.)  He also argues that when he attempted to obtain

a copy of the Confiscated Items Receipt, the prison informed him that the document did not exist.

(Id. ¶ 5.)  Plaintiff claims the Disciplinary Hearing Report that the Moving Defendants attached

to their Motion is illegible, contains false statements, and contains credibility determinations that

are inappropriate for the court's consideration upon a Motion to Dismiss.  (Id. ¶¶ 2, 6.)  He also

contends that the court should strike both contested exhibits because of alleged violations of the

Federal Rules of Evidence.  (See id. ¶¶ 7-9.)

    Although Plaintiff refers to the Confiscated Item Receipt in his Second Amended

_____

    [4] Plaintiff does not challenge Exhibit No. 3, a Program Review Committee Decision on
Plaintiff's Misconduct Appeal, dated December 16, 2004.

Complaint[5] and the document is central to his claim, Plaintiff has disputed the authenticity of the document.  The Court will not make factual determinations about the authenticity of the document at this stage of litigation.  Therefore, the Court will not consider the Confiscated Item Receipt in ruling on the Motion to Dismiss.

Plaintiff does not specifically refer to the Disciplinary Hearing Report in his Second Amended Complaint, and it is not evident that the document is integral to his complaint.  Thus, it cannot properly be considered here.  See Lum, 361 F.3d at 222 n.3.

**B.      Plaintiff's Retaliation Claims**

Here, Plaintiff brings retaliation claims against Dohman and the Unknown Lieutenant.  (See 2d Am. Compl. 6, 7.)  In Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001), the Third Circuit articulated the elements a prisoner must show to prevail on claims that prison officials have retaliated against him for the exercise of a constitutional right.  First, the plaintiff must show that the conduct leading to the retaliation was constitutionally protected.  Id. at 333.  Second, the plaintiff must show that he suffered an adverse action at the hands of the prison officials and that the adverse action was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights."  Id. (quoting Allah v. Seiverling, 229 F.3d 220, 25 (3d Cir. 2000)) (alteration omitted).  Finally, the plaintiff must show that there is a causal link between the constitutionally protected activity and the adverse action taken against him.  Rauser, 241 F.3d at 333.  To show that causal link, the plaintiff prisoner must demonstrate "that his exercise of a constitutional right was a substantial or motivating factor" in the decision to discipline him.  Id.

---

[5] Plaintiff states in his complaint that he received a copy of the document, and he alleges certain details of the contents of that document.  (2d Am. Compl. 5-6.)

at 334.

1.      Freedom of Speech

Plaintiff purports to assert a First Amendment retaliation claim for retaliation after exercise of his right to speak or right to remain silent.  He alleges that Dohman and the Unknown Lieutenant retaliated against him for "exercising his right of silence and refusal to cooperate about illegal activity plaintiff had no knowledge of." (2d Am. Compl. 7.)  He argues that because he would not admit to involvement with the confiscated items when questioned about them, Dohman and the Unknown Lieutenant fabricated the Misconduct Report against Plaintiff, and Canino, with knowledge of the falsity of the charges, sanctioned Plaintiff by placing him into restrictive housing.[6]

"[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment.  That protection includes private expression not related to matters of public concern." Eichenlaub v. Twp. of Indiana , 385 F.3d 274, 282 -283 (3d Cir. 2004) (citations omitted).  The Supreme Court has recognized that "imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment." Beard v. Banks, 548 U.S. 521, 528 (2006) (citing Turner v. Safley, 482 U.S. 78 (1987))).  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

Many of the specifics of inmates' First Amendment rights to free speech have not been

---

[6] Below, the Court also considers Plaintiff's claim for retaliation against the exercise of his Fifth and Fourteenth Amendment privilege against self-incrimination.

addressed by the Third Circuit or the Supreme Court.  However, the Supreme Court has set forth

a test that guides courts in their decision as to whether a prison practice that infringes upon a

constitutional right of inmates is constitutional.  The Turner test asks 1) whether there is a valid,

rational connection between the prison practice and the legitimate governmental interest put

forward to justify it; 2) whether inmates retain alternative means of exercising the circumscribed

constitutional right; 3) the burden on prison resources that would be imposed by accommodating

the right; and 4) whether there are alternative practices that fully accommodate the prisoners'

rights at *de minimis* cost to valid penological interests.  Turner, 482 U.S. 78 at 89-91.  "The

Turner analysis presupposes that the plaintiff inmate has demonstrated that a constitutionally

protected interest is at stake."  Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (internal

quotation and citation omitted).

        At the motion to dismiss stage, the Court shall not make the factual determinations

necessary to apply the Turner test.  Plaintiff has alleged that he was retaliated against for his

speech or his decision not to speak.  Speech is an activity protected by the First Amendment.[7]

Therefore, the alleged conduct leading to the retaliation was constitutionally protected.

        The Court finds, and Defendants appear not to dispute, that Plaintiff's Second Amended

Complaint sufficiently alleges that Dohman and the Unknown Lieutenant took adverse actions

against Plaintiff.  The adverse actions included, *inter alia*, fabrication of the Misconduct Report.

        The third step in the retaliation inquiry is causality.  In his Second Amended Complaint,

---

        [7]  Defendants contend that, in order to be protected, Plaintiff's speech must relate to a
matter of public importance.  (Defs. Mot. to Dismiss 9.)  However, the Third Circuit has held
that such a reading of the case law is overbroad and that the "public concern" requirement applies
only when a claim of First Amendment retaliation is brought by a public employee against his or
her government employer.  Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004).

Plaintiff alleges that certain defendants fabricated misconduct charges against him because of his protected activity, *i.e.*, his denial of the charges.  He asserts that his refusal to admit to participation in illegal activity is sufficient to suggest a retaliatory motive on the part of Dohman and the Unknown Lieutenant.  (See 2d Am. Compl. 6, 7 (stating that the Unknown Lieutenant conspired with Dohman to create the fabricated misconduct charge, and these two defendants were "motivated by retaliation").)   Plaintiff also alleges that adverse actions were taken against him immediately after he exercised his First Amendment rights.  Plaintiff's allegations in this regard are attenuated, but there is Third Circuit authority suggesting that his allegations regarding Dohman and the Unknown Lieutenant suffice to withstand a motion to dismiss.  See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (overturning the dismissal of a *pro se* prisoner's First Amendment retaliation claim and agreeing with the plaintiff "that the word 'retaliation' in his complaint sufficiently implies a causal link between his complaints and the misconduct charges filed against him").  See also Bendy v. Ocean County Jail, 2009 WL 2170424, *3 (3d Cir. July 22, 2009) (holding, in a post-Twombly case, that "[t]o state a claim for retaliatory treatment, a complaint need only allege a chronology of events from which retaliation may be inferred." (internal quotations and citations omitted)).  Because the Court finds that the Second Amended Complaint just barely states "enough facts to raise a reasonable expectation that discovery will reveal evidence of" retaliation, the Court will not dismiss the First Amendment retaliation claim against Dohman and the Unknown Lieutenant.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

        2.        Privilege Against Self-Incrimination

The Court also considers Plaintiff's claim that Dohman and the Unknown Lieutenant

retaliated against him for the exercise of his privilege against self-incrimination.  Although the privilege against self-incrimination is not mentioned by name, this claim is present in Plaintiff's Second Amended Complaint where he claims he was retaliated against for his choice not to incriminate himself when questioned about drug smuggling into the prison.[8]

The Fifth Amendment privilege against self-incrimination provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.[9]  As the Supreme Court has made clear,

> [T]his prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

Minnesota v. Murphy, 465 U.S. 420, 426 (1984) (internal quotation and citation omitted).

In one portion of his pleading, Plaintiff alleges that he denied knowledge of the heroin when questioned by Dohman,.  (2d Am. Compl. 5.)  However, Plaintiff also alleges that he exercised his "right of silence."  (2d Am. Compl. 7.)  For purposes of the motion to dismiss, the Court resolves all doubts in Plaintiff's favor and presumes that Plaintiff invoked his privilege against self-incrimination.  In this case, Plaintiff's desire not to incriminate himself in the investigation of drug smuggling into the prison is constitutionally protected activity.  Again, Plaintiff has alleged that Dohman and the Unknown Lieutenant took adverse actions against him.

As with the First Amendment retaliation claim, here Plaintiff has alleged sufficient facts

---

[8] Defendants do not address self-incrimination in their Motion to Dismiss.

[9] The Fifth Amendment was made applicable to the states by the Fourteenth Amendment. County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 164 (3d Cir. 2006).

to suggest causality.  Therefore, the Court will not dismiss the Fifth Amendment retaliation claim against Dohman and the Unknown Lieutenant.

### C.      Plaintiff's Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law."  Burns v. Pa. Dept. of Corr., 544 F.3d 279, 285 (3d Cir. 2008) (citations omitted).  A protected liberty interest in avoiding prison disciplinary sanctions can arise either from the Due Process Clause itself or from state law.  Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (citing Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir.1999)). Although state law may also create liberty interests that are protected by the Due Process Clause, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.  Whether a hardship is "atypical and significant" is determined by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction.  Griffin, 112 F.3d at 706.  Property interests are protected by the Due Process Clause but not created by it.  Phillips v. Washington Legal Found., 524 U.S. 156, 164 (1998).  To determine whether a property interest exists, a court must look to "existing rules or understandings that stem from an independent source such as state law."  Id. (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).

Although prisoners may claim due process protections, their rights "may be diminished by the needs and exigencies of the institutional environment."  Wolff v. McDonnell, 418 U.S. 529, 555 (1974).  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Asquith, 186 F.3d at 410 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  Generally speaking, discipline by prison officials in response to a "wide range of misconduct" falls within the expected parameters of a prisoner's sentence.  Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (quoting Sandin v. Conner, 515 U.S. 472, 485 (1995)).

Analysis of a procedural due process claim requires a court first to consider whether the plaintiff has a protected interest in life, liberty or property that has been interfered with by the state.  Bd. of Regents v. Roth, 408 U.S. 564, 571 (1972).  The Court must then decide how much process the plaintiff was due and whether the process that was provided was constitutionally insufficient.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000); Hewitt v. Helms, 459 U.S. 460 (1983).

In this case, Plaintiff claims that Defendant Canino violated his life, liberty, or property interests when she found him guilty at the disciplinary hearing, placed him into Restrictive Housing Unit ("RHU") and subjected him to various deprivations, which ultimately led to his transfer to S.C.I. Greene.  (See 2d Am. Compl. 7, 10.)  As an initial matter, the Moving Defendants assert that they cannot be liable for many of Plaintiff's alleged due process violations because Plaintiff does not allege that these Defendants were directly responsible for such violations.  Defendants are partially correct.  Plaintiff's complaint only alleges that Canino

deprived him of due process.  Therefore, to the extent that Plaintiff brings a due process claim against Dohman and the Unknown Lieutenant, those claims will be dismissed.  Below, the Court considers the due process claims against Canino.

                    1.        Plaintiff's Alleged Deprivations of Liberty and Property Interests

                            a.        RHU Placement

Plaintiff claims that a protected liberty interest was infringed upon when he was placed in RHU for 302 days and provided no access to vocational, academic, or rehabilitative programs, denied personal visits, subjected to body cavity searches and only permitted 3 showers a week. Placement into administrative confinement, without more, will rarely implicate a liberty interest. Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000).  Plaintiff's placement in the RHU does not implicate an interest protected by the Due Process Clause itself.  Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995) (holding that the Due Process Clause does not create a liberty interest for an inmate to remain among the general prison population).  There also is no state-created liberty interest implicated by placement in the RHU.  The Third Circuit has held that placement in the S.C.I. Graterford RHU for periods as long as fifteen months does not create an atypical and significant hardship and, thus, does not deprive an inmate of a liberty interest.  Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997).  But see Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000) (holding that eight years in administrative custody with no prospect of immediate release was atypical for a Pennsylvania state prisoner and implicated a protected liberty interest).

Plaintiff also claims that his liberty interests were infringed upon by the totality of the circumstances that he faced while in the RHU.  (See Am. Compl. 9, ¶ 19.)  He alleges that in the

RHU he had no access to vocational, academic, or rehabilitative programs; that he was subject to

body cavity searches; that he was denied access to religious services; that his job was taken from

him; that he was denied personal visits; that his access to the law library was restricted; that he

was only permitted three showers a week, was given cold food, and subjected to 24 hours of

light; that his personal and legal mail was censored; and that he was unable to satisfy a

prescriptive program plan.  (2d Am. Compl. 8.)  Again, the question is whether these conditions

create an atypical or significant hardship for Plaintiff.  Plaintiff has plead no facts to support a

claim that these conditions were atypical among Pennsylvania state prisoners, and judicial

precedent indicates that these conditions were not atypical in relation to other Pennsylvania

prison conditions.  See Rauso v. Vaughn, 2000 WL 873285, Civ. No. 96-6922 (E.D. Pa. June 26,

2000) (finding that a Pennsylvania inmate's stay in the RHU, wherein he was deprived of his

legal materials, he was let out of his cell once a day for a yard visit, and he was allowed to

shower three times a week, was within the expected parameters of his sentence).  See also Torres

v. Fauver, 292 F.3d 141 (3d Cir. 2002) (holding that a New Jersey inmate who had been confined

to administrative segregation for 120 days had not "alleged the type of atypical, significant

deprivation in which a State might conceivably create a liberty interest"); Bryan v. Werner, 516

F.2d 233, 240 (3d Cir. 1975) (holding that Pennsylvania prisoners have no liberty or property

interest in their job assignments); James v. Quinlan, 866 F.2d 627, 629 (3d Cir. 1989) (holding

that the Due Process Clause itself does not convey a liberty interest in prison jobs).  But see

Wilkinson v. Austin, 545 U.S. 209, 224 (2005) (holding that indefinite placement in an Ohio

supermax prison with very restrictive conditions, including 24-hour illumination, imposed an

atypical and significant hardship to Ohio prisoners).

Prison disciplinary proceedings that result in administrative confinement may constitute a denial of due process when they are instituted for the sole purpose of retaliating against an inmate for his exercise of a constitutional right.  Mensinger, 293 F.3d at 653; Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000) ("[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.")  Plaintiff's retaliation claims against Dohman and the Unknown Lieutenant are addressed above.  Plaintiff has not alleged that Canino had a retaliatory motive when she sanctioned him to the RHU.  Therefore, Plaintiff's due process claim against Canino regarding his RHU placement will be dismissed.

b.      Transfer to S.C.I. Greene

The Due Process Clause does not protect inmates from transfer from one institution to another within a state prison system, even if the change in facility subjects the inmate to more strict conditions of confinement.  Meachum v. Fano, 427 U.S. 215, 224-25 (1976); McKune v. Lile, 536 U.S. 24, 39 (2002).  Therefore, Plaintiff could only have a state-created liberty interest. Meachum, 427 U.S. at 226.  In this case, Plaintiff has not alleged that any state law or regulation gave him a liberty interest in preventing his transfer to S.C.I. Greene.  Plaintiff has alleged that S.C.I. Greene is "a distant supermax prison," but, other than his use of the term "supermax," Plaintiff has not plead any facts to indicate that his transfer to S.C.I. Greene imposed an atypical and significant hardship in relation to ordinary prison life.  See Wilkinson v. Austin, 545 U.S. 209, 213 (2005) (stating that supermax prisons are "maximum-security facilities with highly restrictive conditions").   Even if the transfer to S.C.I. Greene did impose an atypical and significant hardship upon Plaintiff, his placement there could comports with due process so long

as prison officials afforded him sufficient procedural protections.  Wilkinson, 545 U.S. 209, 225.

Plaintiff makes no allegations regarding the presence or absence of procedures afforded him

before and after his transfer.   Furthermore, Plaintiff states that he was transferred to S.C.I.

Greene in retaliation for exercising his First Amendment rights, but he does not allege any facts

to support that allegation.  He does not even state who made the decision to transfer him.  For

these reasons, Plaintiff's due process claim regarding his transfer will be dismissed.

c.      Additional Deprivations

Plaintiff alleges that several additional violations occurred as a result of his administrative

confinement: censorship of his personal and legal mail, denial of access to religious services,

denial of library access, and restricted law library access.  Plaintiff appears to assert that these

deprivations were violations of his liberty interests protected by the Due Process Clause.

The Court construes Plaintiff's allegation of restricted law library access to be a claim

that his right to access courts was violated.  Inmates have a right of meaningful access to courts,

and that encompasses the right to access law libraries or assistance from persons trained in the

law.  Allah v. Seiverling, 229 F.3d 220, 224 (3d. Cir. 2000) (citing Bounds v. Smith, 430 U.S.

817, 828 (1997).  The right of access to the courts is protected by the Due Process Clause.

Tennessee v. Lane, 541 U.S. 509, 523 (2004).  To raise an access-to-courts claim, an inmate must

allege that an actual injury resulted from the alleged interference – *i.e.*, "that he or she had been

hindered in an effort to pursue a nonfrivolous legal claim." Jones v. Brown, 461 F.3d 353,

358-59 (3d Cir. 2006) (citing Lewis v. Casey, 518 U.S. 343, 349-53 (1996)).  Because Plaintiff

has not made an allegation of actual injury, the law library access-to-courts claim will be

dismissed.

Plaintiff also alleges that he was denied access to the regular library while in the RHU. Although there is no case law that indicates that non-law-library access is specially protected by the First Amendment, the Court assumes, for purposes of this Motion to Dismiss, that this is a deprivation that implicates a First Amendment right.  See Beard v. Banks, 548 U.S. 521, 528.

Prison inmates generally have no expectation of privacy regarding their personal mail, but prison officials must open inmates' legal mail, if at all, in the presence of the inmate.  See Wolff v. McDonnell, 418 U.S. 539, 576-77 (1974); Jones v. Brown, 461 F.3d 353, 358-59 (3d Cir. 2006).  A claim of interference with legal mail could be either a free speech claim or an access-to-courts claim.  Unlike access-to-courts claims, a plaintiff need not allege any consequential injury to bring a First Amendment claim that prison officials have opened his legal mail outside of his presence.  Jones, 461 F.3d at 359; Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997). Resolving all doubts in Plaintiff's favor, the Court takes Plaintiff's legal mail allegation to be part of a claim that the prison violated his First Amendment right to engage in protected communications.  See Jones at 359-60.

Prison inmates also have a First Amendment right to the free exercise of religion, which is implicated by Plaintiff's allegation that he was denied access to religious services.[10]

Because Plaintiff has alleged that he was subject to certain constitutional deprivations (access to the regular library, private access to legal mail, and access to religious services), the Court shall analyze the process afforded Plaintiff by Canino.

---

[10] Prison actions alleged to infringe upon these rights are subject to the  four-part reasonableness test of Turner v. Safley, 482 U.S. 78 (1987).   The Turner analysis is fact-intensive and is appropriate upon a summary judgment motion, not a motion to dismiss.  See Wolf v. Ashcroft, 297 F.3d 305, 310 (3d Cir. 2002).

    2.    The Process Afforded to Plaintiff

Assuming that Plaintiff has properly alleged that he was deprived of liberty interests such as his rights to free speech and freedom of religion, the Court must next decide how much process Plaintiff was due.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).  The Supreme Court has held that at least minimal due process rights are required in disciplinary proceedings. This required process includes (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing, (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action, and (3) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.  Wolff, 418 U.S. at 563-571.

Here, Plaintiff received a written statement of the charge against him, that is, the Misconduct Report.  He received a Misconduct Report on November 29, 2004.  (2d Am. Compl. 5; Misconduct Report.)  The Misconduct Report purports to have been written on the day it was delivered to Plaintiff.  (See 2d Am. Compl., Ex. A5, DC-ADM 801, Inmate Discipline Policy re: Service of Misconduct Report.)  Plaintiff alleges that the misconduct report was actually prepared on November 2, 2004, and that he was not given a copy of the Misconduct Report on the day it was actually written, in compliance with the prison rules.  Even if true, Plaintiff does not allege that he was deprived of notice of the charges against him or time to prepare his defense. Therefore, the mis-dated and late-served Misconduct Report does not constitute a deprivation of due process.  Wolff, 418 U.S. at 564.

Even if the Misconduct Report is false, Plaintiff was on notice of the charge against him

and had an opportunity to contest it at the hearing.  See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim.").  Moreover, even if Canino knew the misconduct report was false and ignored that fact, Canino's action would be a due process violation only insofar as Plaintiff could prove that her action was taken with a retaliatory motive.  As discussed above, Plaintiff has not alleged that Canino had a retaliatory motive.

Plaintiff makes no allegation that prison officials failed to provide him with a written statement by the disciplinary hearing factfinder as to the evidence she relied on and the reasons for the disciplinary action taken.  He also makes no allegation that he was given no opportunity to call witnesses and present documentary evidence in his defense.  Although he alleges that no physical evidence corroborated the allegations in the Misconduct Report, an absence of physical evidence against him does not deprive Plaintiff of due process.

The Court finds that, even if Plaintiff has plead protected liberty interests, he has not alleged that he was denied a meaningful process during which he could challenge these conditions.

### D.    Plaintiff's Cruel and Unusual Punishment Claim

To state an Eighth Amendment claim against a prison official about prison conditions, an inmate plaintiff must allege that (1) he was subject to a sufficiently serious objective deprivation and (2) that the prison official acted with "deliberate indifference" to the inmate's health or safety.  Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).  Prison conditions only

violate the Eighth Amendment where they cause "unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities." Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 418 (3d Cir. 2000) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).   Prisons assume responsibility for satisfying prisoners' basic human needs, such as food, clothing, shelter, medical care, and reasonable safety.  Tillman, 221 F.3d 418 (citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989)).  Plaintiff does not allege that he was deprived of food, clothing, shelter, medical care, or reasonable safety.  As for the length of Plaintiff's stay in the RHU, the Third Circuit has found 15 months in Graterford's RHU – approximately 5 months more than the amount of time this Plaintiff alleges he was in the RHU – not to be a sufficiently serious objective deprivation.  See Griffin, 112 F.3d at 709.  For purposes of the Eighth Amendment, it does not matter whether Plaintiff ended up in the RHU for a false misconduct charge.  A false misconduct charge – even an intentionally false charge – is not sufficiently serious where it does not deprive Plaintiff of the minimal civilized measure of life's necessities.  See Booth v. Pence, 354 F. Supp. 2d 553, 559 (E.D. Pa. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

A policy of 24-hour illumination arguably could support an Eighth Amendment violation.  In dicta in an unpublished opinion, the Third Circuit has observed that other courts have found no legitimate penological justification for 24-hour illumination.  Bacon v. Minner, 229 F. App'x 96, 99-100 (3d Cir. April 19, 2007).  Although Plaintiff does not describe the origin or intensity of the light in his cell, and he does not allege any resulting medical problems, any doubts here must be resolved in his favor.

Assuming Plaintiff has alleged a sufficiently serious objective deprivation because of the

24-hour lighting in his RHU cell, he still has not alleged that any prison official acted with the requisite subjective mental state in exposing him to an unreasonable risk of harm.  Plaintiff's only relevant declaration in this regard appears at the very beginning of his Second Amended Complaint, where he writes, as a general preface to his statement of claims, "This claim is against Defendant Captain Thomas Dohman, who acted with deliberate indifference."  (2d Am. Compl. 1.)  Plaintiff does not allege, however, that Dohman had any control over him placement in the RHU or the conditions to which Plaintiff was subjected while in the RHU.  Therefore, Plaintiff's Eighth Amendment claim will be dismissed as to Defendants.

**IV.**      **Conclusion**

For the reasons stated above, the Moving Defendants' Motion to Dismiss will be granted in part and denied in part. Plaintiff's due process and Eighth Amendment claims will be dismissed.  Plaintiff's retaliation claims against Defendants Dohman and the Unknown Lieutenant shall stand.

The Court shall refer this matter to the Prisoner Civil Rights Panel for the United States District Court for the Eastern District of Pennsylvania for the appointment of counsel.

An appropriate Order follows.