IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| THURMAN MEARIN | : | CIVIL ACTION |
|---|---|---|
| Plaintiff, | : | NO. 06-4859 |
| v. | : | |
| MAJOR THOMAS DOHMAN and LIEUTENANT JOHN MOYER | : | |
| Defendants. | : | |

**MEMORANDUM**

**Jones, II, J.**                                                                                                          **March 21, 2013**

Thurman Mearin, a prisoner in state custody serving a life sentence, brought this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants Major Thomas Dohman and Lieutenant John Moyer unlawfully retaliated against him in violation of his First and Fifth Amendment rights. Presently before the Court is the Defendants' Motion for Summary Judgment (Dkt. No. 78), along with a Statement of Undisputed Facts (Dkt. No. 79). Mearin has filed a Response to the Motion (Dkt. No. 82), a Statement of Facts Answering Defendants' Statement of Undisputed Material Facts and a Counter-Statement of Facts. (Dkt. No. 83). For the reasons set forth below the Defendants' Motion will be granted.

**I.     LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat a motion for summary judgment, disputes must be

both (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. An issue is genuine if the fact finder could reasonably return a verdict in favor of the nonmoving party with respect to that issue. *Anderson*, 477 U.S. at 249. In reviewing a motion for summary judgment, the court does not make credibility determinations and "must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## II.   FACTS

At the time of the events giving rise to this litigation, Defendant Dohman was the Security Captain at the State Correctional Institution at Graterford ("SCIG"). (Def. Ex. A ("Dohman Dep.") at 16.) Defendant Moyer was a Security Department Lieutenant. (Def. Ex. B ("Moyer Dep.") at 5.) Mearin was an inmate at SCIG since 1995, serving a life sentence with no possibility of parole, plus a consecutive twenty-year sentence. (Def. Ex. C ("Mearin Dep.") at 8, 10.) On November 2, 2004, a mail inspector at SCIG notified the Internal Security Department that a suspicious package containing a hard cover book addressed to inmate Terrance Edmonds, aka Jazz, was isolated for further scrutiny. (Moyer Dep. at 16.) Sgt. Springer was called to the mail room to conduct a canine "air scan" with K-9 Oliver. The initial air scan produced no results from K-9 Oliver. (Def. Ex. D at 16.) Upon opening the package, the inspector noticed that the book's cover and spine appeared to have been altered. (Moyer Dep. at 16.) K-9 Oliver

then showed a behavior change on sniffing the book, knocked it off the desk where it had been placed, and sat on it. (Def. Ex. D at 18.) Lt. Moyer noticed an identical package addressed to Mearin. (Moyer Dep. at 17.) That package was also opened and found to contain a hard cover book that had been altered. (*Id.*) There is no indication in the record that K-9 Oliver air scanned this book. The packages were identically wrapped, were mailed from the same address, and appeared to come from a fictitious book retailer. (*Id.* at 58-59; Def. Ex. D at 1.) Lt. Raymond Knauer, in Moyer's presence, opened both book bindings and discovered that each book contained twelve small blue wax bags. (Moyer Dep. at 23-25, 51; Def. Ex. D at 1.) All twenty-four bags were identically marked with an encircled "X" and contained a brownish, powdery substance suspected to be heroin. (Moyer Dep. at 47; Def. Ex. D at 1-2, Def. Ex. A at 2.)

The books, packaging material, and suspected heroin were taken to the Internal Security Department and Moyer called the Pennsylvania State Police. (Moyer Dep. at 25.) Trooper Thomas Bishop responded to SCIG and conducted a field test on one of the bags removed from the book addressed to Edmunds. (*Id*. at 37, 52; Def. Ex. D at 2.) The package field tested positive for opium alkaloids using the NIK Reagent Test Kit A, and the wax bags were processed as evidence and turned over to Trooper Bishop. (Moyer Dep. at 53; Def. Ex. D.) No test was performed on a bag found in the book addressed to Mearin. (Dohman Dep. at 139.) The packages and their contents were turned over to the Pennsylvania State Police. (Dohman Dep. at 139-49; Moyer Dep. at 37; Pl. Ex. 1 at 2, 5.) Once contraband is turned over to the State Police, it is within its discretion whether to do additional testing or file criminal charges. (Moyer Dep. at 35.) The contraband was destroyed by the Pennsylvania State Police on September 19, 2007, approximately one year after Mearin brought this suit. (Pl. Ex. E; Ex. F at 11.) There is no evidence that the State Police notified Defendants prior to destroying the contraband. After they

were named in this suit, neither Dohman nor Moyer ever contacted the State Police to retrieve the contraband or to prevent its destruction. (Dohman Dep. at 153.)[1]

On November 29, 2004, Moyer and Dohman interviewed Mearin about the packages. (Moyer Dep. at 39; Dohman Dep. at 59-60; Def. Ex. F.) Mearin was not shown the packages or the bags of heroin during the interview, but he was shown a picture of the books. (Mearin Dep. at 20.) Mearin denied that he arranged to receive heroin through the mail, but admitted that he was friends with Eric Tubbs, aka Najee Aazoner, the man suspected of shipping the books to SCIG. (Def. Ex. F at 2, 4-5.) He admitted that he communicated with Tubbs using a written Egyptian language called "grifficks." (*Id.* at 6; Mearin Dep. at 36.) A key equating symbols to letters and numbers was found in a subsequent search of Mearin's cell on December 1, 2004. (Def. Ex. D at 6; Def. Ex. H.) Mearin denies that the key is a code, claiming that it is "grifficks." (Dohman Dep. at 71-72; Def. Ex. F at 6.) During the interview, Dohman told Mearin that he was going to be given misconducts for his involvement with the heroin. (Def. Ex. F at 4, 7-8.)

An investigation of correctional officers at SCIG suspected of bringing contraband into the facility was going on at the same time as the Mearin incident. (Dohman Dep. at 72-76.) It resulted in the incarceration of four or five officers. (*Id.* at 75.) These officers' activities were not related to the Mearin incident and there is no evidence that Mearin was involved in those activities. (*Id.*) Dohman asked Mearin if was able and willing to give him any information on prison staff involved in bringing contraband into SCIG. (Def. Ex. F at 8.) Mearin denied any knowledge of unlawful activity. (*Id.*)

---

[1] No party disputes that Moyer did not contact the State Police to secure the evidence. (*See* Pl. Counterstatement at ¶ 27, Defs.' Reply at 2). However, this Court notes that the deposition excerpts each party cites in support of that statement, Moyer Dep. at 35, 37, 53, 56, have not been included in the summary judgment record.

Moyer issued Mearin Class A misconducts for possession of a controlled substance, committing a violation of the Pennsylvania crimes code, specifically conspiracy, and Class B misconducts for possession of contraband and lying to an employee. (Def. Ex. I.) He was placed in pre-hearing confinement in the Restricted Housing Unit ("RHU"). (Def. Ex. D at 4.) A misconduct hearing was held on December 2, 2004 and Mearin was found guilty of all four misconducts. (Def. Ex. J.) He was removed from his prison job, and ordered to serve 270 days of disciplinary custody in the RHU, which after appeal, was reduced to 103 days. (*Id.*; Mearin Dep. at 15-18, 73.) After 103 days in disciplinary custody, he was transferred to the State Correctional Institution at Greene. (Mearin Dep. at 16, 74.)

Plaintiff's expert, Alan C. Donelson, Ph.D., holds a doctoral degree in pharmacology and an undergraduate degree in chemistry. (Pl. Ex. 1, App'x B.) He has submitted a report opining that the NIK Test Kit A is not specific for the category of chemicals known as opium alkaloids or for the specific chemical compound heroin. (*Id.* at 3.) Rather, it tests a variety of substances, of which heroin (diacetylmorphine) is one. (*Id.*, Table 1.) He opines that the specific test for "brown heroin" is NIK Test Kit L. (*Id.* at 4.) He notes in his report that there is no indication in the record that other packets discovered in the altered books were tested to ensure that the contents of all the packets were the same, and there is no record of any further testing done by the Pennsylvania State Police before the samples were destroyed. (*Id.* at 5.) He opines that the record does not establish direct, positive evidence that the packets found in the book sent to Mearin contained heroin. (*Id.*) He notes that a news article reported the use of "sham heroin" on May 27, 2004 (approximately five months before the incident giving rise to this litigation), during an investigation into the smuggling of contraband into SCIG. (*Id.*) He opines that he

cannot form an opinion with reasonable scientific certainty that the packets contained heroin. (*Id.* at 6.)

## II. **DISCUSSION**

a. Spoliation

As a threshold issue, Mearin argues that summary judgment should be denied and the Defendants' defenses should be stricken as a sanction for their spoliation of evidence central to the Plaintiff's case, namely the packets of heroin, the altered book addressed to him, and its packaging. It is well-settled that "[a] party which reasonably anticipates litigation has an affirmative duty to preserve relevant evidence." *Bowman v. Am. Med. Sys. Inc.*, Civ. A. No. 96-7871, 1998 WL 721079, at *3 (E.D. Pa. Oct. 9, 1998); *see also Hohider v. United Parcel Serv., Inc.*, 257 F.R.D. 80, 82 (W.D. Pa. 2009) (same). "Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Chirdo v. Minerals Techs., Inc.*, Civ. A. No. 06-5523, 2009 WL 2195135, at *1 (E.D. Pa. July 23, 2009) (*quoting Mosaid Techs., Inc. v. Samsung Elec. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012). To determine whether sanctions stemming from a spoliation are appropriate, courts consider the following factors:

> (1) The degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party, and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Id.* at 79 (*citing Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). Appropriate sanctions may include dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs. *Chirdo*, 2009 WL 2195135, at *1 (*quoting Mosaid Techs.*, 348 F. Supp. 2d at 335).

Mearin argues that spoliation occurred because Defendants had a duty to preserve the mailed package and its contents after it was seized on November 2, 2004, because it was within their control; despite being named as Defendants in this action on October 30, 2006, they took no steps to contact the State Police to secure the evidence or prevent its destruction; it was reasonably foreseeable that the package and its contents would later be discoverable; and the destruction of the evidence was highly prejudicial to Mearin's claim. The summary judgment record does not support a conclusion that Defendants could reasonably foresee a duty to preserve the evidence.

It is undisputed that custody of the packets of heroin, the altered books and the packaging were preserved by Defendants during the brief period the evidence was within their control on the day the evidence was confiscated in the SCIG mailroom. On that same day, custody was transferred to Trooper Bishop of the Pennsylvania State Police. Thereafter, the State Police had continuous custody of the evidence until it was destroyed by them on September 9, 2007. Mearin has failed to meet his summary judgment burden of establishing that Defendants Dohman and Moyer had control of the evidence after it was turned over to the State Police, or that persons in the place of Dohman and Moyer would reasonably anticipate that they personally had a duty to preserve this evidence once it left the prison. Not only did Defendants have no physical control over the evidence, they had no role in the decision whether the evidence would

be preserved to bring additional criminal charges against Mearin, a prisoner already serving a no-parole life sentence. Once the institutional misconduct charges were administratively resolved against Mearin with finality, the Defendants' personal interest in the matter was at an end. Finally, there is no evidence they were informed beforehand that the contraband would be destroyed. Under the totality of the circumstances, it would not be reasonable to impose a duty upon Defendants to foresee a need to safeguard the evidence once it was transferred to the custody of law enforcement. *See Bull,* 665 F.3d at 77-78 (stating the question of reasonable foreseeability as a "'flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry.'" (*quoting Micron Tech., Inc. v. Rambus Inc.,* 645 F.3d 1311, 1320 (Fed. Cir. 2011)). While Mearin may have suffered prejudice from the destruction of the evidence, this Court concludes that Defendants cannot be held at fault for the spoliation. Accordingly, spoliation sanctions, including any adverse spoliation inferences, are not appropriate.

    b.    Retaliation

The operative version of Mearin's Complaint (Dkt. No. 71) alleges a single cause of action for retaliation against Dohman and Moyer. He alleges that he exercised his First Amendment free speech rights, and his Fifth and Fourteenth Amendment privilege against self-incrimination, when he denied knowledge of any heroin being sent to him, denied any involvement in any conspiracy, and denied knowing anything about SCIG personnel being involved in illicit activity. (*Id.* ¶ 7.) Mearin contends that he was sent to the RHU as a result of his exercising his constitutional rights. (*Id.* ¶ 8.) He alleges he was not sent heroin, the entire incident was fabricated, and the charges were deliberately falsified by Dohman and Moyer because he refused to give them information about corrupt corrections officials. (*Id.* ¶¶ 11-12.)

In their Motion for Summary Judgment, Defendants argue that Mearin has failed to establish his retaliation claim. This Court agrees that the entry of summary judgment is appropriate.

To establish a retaliation claim, a prisoner must prove that (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some "adverse action" at the hands of the prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his constitutionally protected conduct was "a substantial or motivating factor" in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The burden then shifts to the defendant to demonstrate that the same disciplinary action would have been taken even in the absence of the protected activity. *Id.* "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334. Because retaliation claims can be easily fabricated, this Court must view the retaliation claim with sufficient skepticism to avoid becoming entangled in disciplinary actions taken against prisoners. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

The first element of Mearin's retaliation claim is that he was engaged in conduct that was constitutionally protected. Plaintiff claims that Defendants retaliated against him in violation of his First and Fifth Amendment rights, based on his denying any knowledge of heroin being sent to him, denying any involvement in a conspiracy, and denying knowledge of SCIG personnel being involved in illicit activity. (Dkt. No. 71 at ¶ 7.) A review of the transcript of Mearin's interview on November 29, 2004, reveals that he willingly participated in the interview, he never

invoked his Fifth Amendment right to remain silent and refuse to answer questions, and he never refused to speak with Dohman and Moyer. (*See* Def. Ex. F.) Mearin's decision to answer questions eviscerates any Fifth Amendment basis for his retaliation claim. *United States v. Frierson*, 945 F.2d 650, 660 (3d Cir. 1991) ("It is well established . . . that the Fifth Amendment privilege against self-incrimination is not self-executing and thus must be claimed when self-incrimination is threatened."); *see also Berghuis v. Thompkins*, ___ U.S. ___, 130 S.Ct. 2250, 2263 (2010). Mearin did not invoke his right to remain silent; thus, he cannot show that he engaged in the constitutionally protected right to remain silent, and his retaliation claim based on the Fifth Amendment fails as a matter of law.

To the extent that Mearin's claim may be interpreted to aver that Defendants retaliated against him, not because he refused to speak, but because they believed he gave them false information when he did speak, this Court finds Mearin has met his summary judgment burden of showing evidence sufficient to establish that his conduct falls within the protections of the First Amendment. Even false statements are generally protected speech. *See United States v. Alvarez,* ___ U.S. ___, 132 S.Ct. 2537, 2547 (2012). However, this is a pyric victory. The summary judgment record establishes that Defendants have met their burden to demonstrate that the same disciplinary action would have been taken even in the absence of the protected activity.

Mearin was found guilty of the underlying disciplinary infraction, following a full and final administrative hearing. As a matter of law, this finding of guilt on the underlying misconduct charge establishes that the charges were not false, and satisfies the Defendants' burden of showing that they would have brought the misconduct charge even in the absence of the protected activity. *Walker v. Campbell*, Civ. A. No. 09-282, 2011 WL 6153104, at *7 (W.D. Pa. Oct. 31, 2011) ("The filing of a prison disciplinary report is not actionable under 42 U.S.C. §

1983 as prohibited 'retaliation' unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not [engaged in protected conduct]."); *Harris–Debardelaben v. Johnson*, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997) (affirming summary judgment in the absence of any indication that disciplinary charges were false or that appellant suffered any impediment in his ability to file grievances); *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998) (affirming summary judgment where record demonstrated that the prisoner in fact committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report, and thus the defendants met their burden of demonstrating proper, non-retaliatory reasons for filing the misbehavior report); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."); *see also Carter v. McGrady*, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have been issued notwithstanding his jailhouse lawyering). Accordingly, Defendants are also entitled to judgment on Mearin's First Amendment retaliation claim.

     An appropriate order follows.